**E-FILED**
Tuesday, 04 August, 2009 03:02:09 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| JANET L. TAYLOR, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 08-2178 |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| sued as Michael J. Astrue, ) | |
| ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In October 2007, Administrative Law Judge (hereinafter "ALJ") E. James Gildea denied Plaintiff Janet Taylor's application for disability insurance benefits (hereinafter "DIB"). The ALJ based his decision on findings that, although Plaintiff suffers from severe impairments, she retains the capability to perform her past relevant work; therefore, she is not disabled within the meaning of the Social Security Act.

In July 2008, Plaintiff filed a Complaint for Judicial Review (#5) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny DIB. In January 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#13). In April 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#18). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#13)** be **GRANTED**.

## I. Background

### A. Procedural Background

Plaintiff applied for DIB in July 2004, alleging disability beginning April 9, 2004. The Social Security Administration (hereinafter "SSA") denied Plaintiff's application in October 2004, and again upon reconsideration in April 2005. Plaintiff requested a hearing and subsequently testified at the video hearing held in September 2007. In October 2007, the ALJ

denied Plaintiff's application for DIB based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and that she was capable of performing her past work.

In April 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Plaintiff then appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g). Plaintiff seeks an outright reversal. In the alternative, she asks the court to remand for reconsideration.

### B.  Plaintiff's Background

Both Parties described Plaintiff's medical background in detail. The Court will not repeat it here.

### C.  The Hearing Before the ALJ

In September 2007, the ALJ held a hearing at which Plaintiff, Glee Ann Kehr, a vocational expert (hereinafter "VE"), and Fred Taylor III, Plaintiff's husband, testified.

Plaintiff testified she has been married for 36 years, and lives with her husband in their home. (R. 296.) She drove herself to the hearing, and has medical coverage through her husband's work. (R. 296.) She last worked as a kitchen aide at a retirement home, where she prepared salads and did the dishes. (R. 297.) Prior to that job, her last full-time job was at Jo-Ann Fabrics, where she cut fabrics, cashiered, cleaned, and handled orders. (R. 298.) She has also worked at a shoe store, a public school as a dietary aide, and a factory as a paper pusher. (R. 299.)

Plaintiff testified she recently finished two antibiotics she was on because of a rattling in her lungs. (R. 300.) She was diagnosed with sarcoidosis in 1978 and has been treated off and on for her condition. (R. 301.) She has not been to the emergency room or hospitalized since her initial diagnosis. (R. 301-02.) She was currently on two inhalers, but she did not know which two. (R. 302.) She is allergic to dust, pollen, and pet dander. (R. 303.) She has kidney

problems because of her sarcoidosis, but all she notices is increased urination during kidney flare-ups. (R. 303.) Her average day at home entails napping, watching television, and watching her granddaughters. (R. 304.) She testified that her granddaughters are one and five, so she has to feed them, change the baby, and make sure they do not get hurt. (R. 304-08.) She stated she had to tell her daughter to put the baby in daycare because she could not do it any longer. (R. 304-05.)

When questioned by her attorney, Plaintiff testified that she used to be able to lift fifteen pounds but now can only lift three or four pounds at a time. (R. 308.) She loses her balance when she is bending or reaching. (R. 308.) She does not push or pull because she does not have the strength for it. (R. 309.) She usually goes to bed when her husband leaves for work and can sleep for four or five hours and then wakes up gasping for air. (R. 309-10.) She has a lot of phlegm, but that has always been a part of her sarcoidosis. (R. 310.) When she does an activity for 15 minutes, she notices that she is short of breath and tired. (R. 310.) She naps at least four times a day for 30 to 90 minutes. (R. 310.) She limits her driving to less than ten miles. (R. 310-11.) She was told she was legally blind when she was a child, but that was a long time ago and she does not remember details. (R. 311.) She is depressed because she is not able to work, and she is cranky because she cannot catch her breath. (R. 312.) She can only sit or stand for 15 minutes, and was "yantsy" from sitting during the hearing. (R. 313.) She believes she could not work for six to eight hours and she would miss 15 to 17 days of a 23 day work month. (R. 313.)

Mr. Taylor testified he has known the Plaintiff for 36 years, and that she started having respiratory problems after she had her first child, 29 years ago. (R. 315.) He further testified that Plaintiff had difficulties during her second pregnancy and she was closely monitored by a doctor. (R. 317-18.) Since Plaintiff left Jo-Ann Fabrics, she has not been able to do anything on a regular basis. (R. 318.) Plaintiff has been getting cranky, probably because she feels frustrated with not being able to breathe. (R. 318-19.) She forgets a lot of things, so he has to keep track of everything so he can help her. (R. 319.) She can only do menial tasks around the house, and can cook in the microwave or make lunch meat sandwiches. (R. 319-20.) She cannot handle

3

heavy objects because it makes her lose air and become dizzy. (R. 320.) If she sits or stands for too long, she will start to cough. (R. 320-21.) They no longer go out to socialize because they do not know when she is going to have a cough attack. (R. 321.) He believes it takes her twice as long as a normal, healthy person to complete tasks. (R. 321.) When she goes to the grocery store with him, she has to rely on the cart to help keep her up. (R. 321.) She is lying down or in a recliner 60% of the time. (R. 322.)

The ALJ gave the VE a hypothetical question regarding an individual who was limited to light work that does not require more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and does not require concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, or other respiratory irritants. (R. 324.) The VE testified that such an individual could perform Plaintiff's prior work of retail sales and stock clerk. (R. 325.) The VE testified that her testimony was consistent with the *Dictionary of Occupational Titles*. (R. 325.)

When questioned by Plaintiff's attorney, the VE testified that if an individual was limited to no exposure of dust, fumes, or airborne pollutants, then the position of retail sales clerk would be eliminated. (R. 325.) The VE further testified that limiting the individual to less than occasional climbing, stooping, or bending would eliminate all light jobs. (R. 326.)

### D. The ALJ's Report and Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the claimant is not disabled, and the inquiry ends. *Id*. The third question is whether the claimant has an impairment that meets or equals a presumptively

disabling impairment listed in the Regulations. If she does, the claimant is considered disabled and the inquiry ends there. If not, between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work she is still able to perform despite limitations. 20 C.F.R. § 404. 1545. The fourth question is whether the claimant is able to perform her past relevant work with her current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If she can, then she is not disabled. *Id.* If she cannot perform her past work, the fifth and final question is whether with her current limitations she can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows she is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

Here, the ALJ found that Plaintiff has the severe impairment of sarcoidosis, but that impairment does not meet or medically equal any of the listed impairments. The ALJ determined that Plaintiff has the RFC to engage in a limited range of light work. The limitations state that she could occasionally climb, balance, stoop, kneel, crouch, and crawl, and could not have concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work, therefore, Plaintiff was not disabled as defined by the Social Security Act.

## II. Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable

5

minds to differ as to whether a claimant is disabled, the responsibility for making that determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id.* The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

### III. Discussion

Plaintiff argues that the ALJ erred by improperly determining Plaintiff's RFC and credibility and by giving the VE an incomplete hypothetical question, resulting in an error at step four of the analysis.

### A. RFC Finding

Plaintiff first argues that the ALJ's RFC determination is incomplete, erroneous, and not supported by substantial evidence. Specifically, she contends the ALJ played doctor, failed to consider her treatment-induced obesity, and failed to consider her mental impairment.

Plaintiff contends the ALJ played doctor when he failed to evaluate Plaintiff's fatigue, depression, and treatment-induced obesity in combination with her sarcoidosis, and by noting that Plaintiff's lung functions were normal. The Court notes, however, that the ALJ limited Plaintiff to a range of light work because of Plaintiff's coughing, shortness of breath, and *fatigue*. Thus, the ALJ did not ignore Plaintiff's fatigue. Furthermore, while the ALJ did note that the doctors found her lung functions normal, he was not noting merely "hopeful remarks," as Plaintiff characterized it. The record shows that Plaintiff's doctors expressly opined that, although she had a reduced carbon monoxide diffusing capacity, some of her lung functions were normal. *See* R. 195, 199, 213, 232. Accordingly, the Court cannot conclude that the ALJ played doctor by failing to consider Plaintiff's fatigue or by stating that her lung functions were normal.

More significantly, Plaintiff also contends the ALJ erred by failing to consider her treatment-induced obesity. She does not explain in her memorandum how her obesity impairs her ability to work or exacerbates her sarcoidosis, but states only that the ALJ erred by failing to consider it and by not explaining why an obese woman can do light work.

Plaintiff did not specifically claim obesity as an impairment either in her disability application or at her hearing. Nevertheless, Plaintiff is 5 feet, 1 inch tall, and weighed 153 pounds at the hearing. Several of Plaintiff's health care providers noted that Plaintiff was obese and the references to her weight in her medical records were sufficient to alert an ALJ to the impairment. *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (holding that the ALJ should have been alerted by "numerous references in the record" to claimant's weight problem).

An ALJ must not succumb to the temptation to play doctor and make their own independent findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Nevertheless, the ALJ must consider the combined effect of all of a claimant's ailments when determining her RFC. *See Clifford*, 27 F. 3d at 873 (stating that the regulations require the agency to consider the combined effect of all of the claimant's ailments, regardless of whether "any such impairment, if considered separately, would be of sufficient severity" (quoting 20 C.F.R. § 404.1523)).

Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity at several points in the five-step process. *See* SSR 02-1p. The Seventh Circuit court stated in *Prochaska v. Barnhart* that, "[a]lthough the ALJ did not explicitly address Prochaska's obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Similarly, in *Skarbek v. Barnhart*, the Seventh Circuit court noted that "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Thus, in those cases, although the ALJs did not explicitly consider the claimants' obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

7

In this case, the ALJ failed to mention or consider Plaintiff's obesity in combination with all of her impairments. Moreover, although several doctors noted Plaintiff's obesity, the ALJ did not rely on opinions from those doctors. This is particularly significant in this case, because SSR 02-1p expressly states that obesity often complicates chronic diseases of the respiratory system. In the absence of any acknowledgment of Plaintiff's obesity or any discussion about it, the Court cannot conduct a meaningful review. Accordingly, the Court recommends remand so that the ALJ can consider Plaintiff's obesity and explain his reasoning regarding its effect on her condition.

Plaintiff next contends that the ALJ completely ignored evidence of her depression, improperly failed to use the special technique for assessing the depression, and failed to consider her depression when assessing her RFC. The Commissioner responds that Plaintiff was never formally treated for depression and any references to depression were prompted by her self-reported symptoms. As a result, any evidence in the record of depression was inconsequential at best.

The Code of Federal Regulations set forth a special technique to be used at steps two and three to analyze whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. 20 C.F.R. § 404.1520a; SSR 96-8p. In *Craft v. Astrue*, the Seventh Circuit court remanded the ALJ's decision because he failed to use the special technique and failed to discuss the mental medical history, even though he had acknowledged that the claimant had a severe mental disability. *Craft v. Astrue*, 539 F.3d 668, 674-675 (7th Cir. 2008).

The Court has reviewed the record and agrees with the Commissioner that Plaintiff was never formally treated and the references in the record to depression appear to be based on her substantive complaints. However, the ALJ failed to mention depression or Plaintiff's mental condition at all in his decision. An ALJ is required to build an "accurate and logical bridge from

8

the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The Court can only review the ALJ's reasoning if the ALJ explains it. In the absence of any discussion, the Court recommends that, on remand, the ALJ explain his reasoning regarding Plaintiff's claims of depression.

### B. Credibility

Plaintiff next argues that the ALJ erred by failing to make a proper credibility finding. Specifically, Plaintiff contends that the ALJ's credibility determination relied on objective factors that were erroneous.

In a recent decision, the Seventh Circuit court stated that, in reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Id.* at 413-14.

Here, the Court notes that the ALJ's credibility determination was reasoned, supported and factually correct. The ALJ listed the seven factors set forth in the regulations for determining credibility, then accurately described the evidence that correlates with those factors. Based on this explanation, he determined that Plaintiff's statements were not entirely credible. The ALJ sufficiently connected the dots from the evidence to his conclusion, and the Court cannot conclude the ALJ's determination was patently wrong.

9

### C. Step Four of the Five-Step Analysis

Because the Court recommends remand for the ALJ to explain his reasoning regarding Plaintiff's obesity and depression, the Court need not address Plaintiff's remaining arguments.

### IV. Summary

For the reasons set forth above, this Court recommends Plaintiff's Motion for Summary Judgment or Remand **(#13)** be **GRANTED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 4th day of August, 2009.

                                                 s/ DAVID G. BERNTHAL
                                                 U.S. MAGISTRATE JUDGE